

**NUMBER 13-13-00079-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DULCE CASTANEDA,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

---

## On appeal from the 40th District Court
## of Ellis County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Longoria
### Memorandum Opinion by Justice Longoria

By two issues, appellant, Dulce Castaneda, appeals her conviction for money laundering. *See* TEX. PENAL CODE ANN. § 34.02(a)(1) (West 2011). We affirm.

## I. Background[1]

Appellant requested and received a jury trial, during which evidence and testimony was presented regarding the following facts. Trooper Lee Coronado testified that he was working patrol on Highway I-35 in Ellis County, Texas, when he made a traffic stop on a vehicle for not securing a child in a safety seat. The officer and the vehicle he stopped were travelling southbound on I-35, which the officer characterized as a main thoroughfare for drug trafficking organizations.

Appellant was the driver of the vehicle, and her mother, Sonia Flores was a passenger, along with two minor children. Upon being stopped, appellant jumped out of the vehicle and walked toward Trooper Coronado, an action that often occurs with people who are trying to keep an officer away from the vehicle. Appellant said that she was coming from Dallas, having spent the night at her brother's house, where she picked up his children, and was returning to Laredo. At the time of the stop, the children in the car were ages six and three.

Flores, who was extremely nervous, stated that they were coming from some unknown place in Dallas, where they had been for three days. She said they were in Dallas for sightseeing and had stayed in a hotel. Finally, she stated that they went to Dallas to pick up her grandchildren from her son's house. When Trooper Coronado spoke to appellant, she admitted that she had not been honest about staying with her brother.

Trooper Coronado became suspicious of appellant because of the conflicting stories and some characteristics that he identified as common among people involved in

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

2

drug trafficking. He asked for consent to search the vehicle, and appellant agreed. Trooper Coronado specifically asked appellant if there was anything illegal or any money in the vehicle, and she stated that there was not.

Trooper Coronado called for a drug dog, which alerted to the front passenger floorboard. The dog was trained to alert only on odors of marijuana, cocaine, heroin, and methamphetamine. There was a black Adidas bag located there that contained three separate bundles of money wrapped in rubber bands. The bag was under the feet of the passenger. The money had the scent of axle grease and marijuana. Axle grease is used by drug traffickers as a masking agent for large bundles of money, to mask the odor of drugs from the drug dogs. Additional money, totaling $3,000, was found in another bag. There were also seven cell phones found in appellant's purse. Trooper Coronado testified that drug smugglers typically use several phones for different clients and suppliers as well as to avoid wire tap investigations.

At the scene, appellant claimed ownership of the Adidas bag, but she claimed not to know who owned the money. She told Trooper Coronado that she had a friend in the car while she was in Dallas and that he must have put the money in the vehicle without her knowledge. The total amount of money found in the vehicle was $43,250.

After Trooper Coronado was cross-examined, the trial court ruled that the door had been opened for him to testify regarding statements that appellant had made to him that were not recorded. Trooper Coronado then testified that appellant had told him that she had been paid $3,000 to transport the money to Laredo and into Mexico. She told Trooper Coronado that the person who paid her was working with a drug trafficking organization out of Laredo.

3

The State also offered the testimony of appellant's sister-in-law, Erika Carrillo, who authenticated two jail phone calls from appellant. During one call, appellant stated that she had been given $3,000 to spend and stated that she was working with the "same person from last time." At the time of trial, Carrillo's husband (appellant's brother) was serving time in federal prison for conspiracy, drug trafficking, and money laundering. During the call, Carrillo and appellant were talking about a person that Carrillo's husband had worked with in Mexico, someone who had people traffic drugs and money.

Carrillo also testified that appellant had picked up the children weeks before the arrest, not just the day before as appellant had told Trooper Coronado, and that Carrillo had only found out the children were not in Nuevo Laredo on August 6, when the police called her. She had talked to appellant's mother on August 5, but she had no idea that they were coming to Dallas. In fact, they had agreed that Carrillo would pick up the children in San Antonio on August 8.

Trooper Coronado testified that those transporting illegal narcotics or currency often "rent a family" because children give a trip the appearance of legitimacy. They also use their own children and the children of family members.

The jury returned a guilty verdict and assessed a four-year prison sentence and a fine in the amount of $5,000. This appeal ensued.

## II. ANALYSIS

In her first issue, appellant challenges the sufficiency of the evidence to support the jury's verdict.[2]

---

[2] We do not address appellant's second issue challenging the factual sufficiency of the evidence because "the *Jackson* legal-sufficiency standard is the only standard that a reviewing court should apply

4

## A.  Standard of Review

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony.  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . .").  Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision.  *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240.

## B.  Applicable Law

---

in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

A person commits the offense of money laundering if the person possesses the proceeds of criminal activity. *See* TEX. PENAL CODE ANN. § 34.02(a)(1). "Knowledge of the specific nature of the criminal activity giving rise to the proceeds is not required to establish a culpable mental state under this section." *Id.* § 34.02(a–1).

## C. Discussion

Appellant argues that she "lacked the knowledge of possessing the proceeds of criminal activity as alleged in the indictment against her from illegal narcotic sales." According to appellant, "the State failed to offer sufficient evidence as to any specific criminal activity," and "[t]here was no evidence connecting appellant and the money to any specific felony." We disagree.

In his testimony, Trooper Coronado related statements made by appellant confirming that she was paid to transport, and was knowingly transporting, proceeds from an illegal drug organization located in the Laredo area and in Mexico through a contact named "Sergio," who operated out of the Dallas area. Trooper Coronado also testified that the money smelled of marijuana and axle grease, an odor-masking agent used by drug traffickers to avoid detection. Other evidence admitted at trial included audio recordings of phone calls appellant made from jail to her sister-in-law in which the two women discussed "Sergio," for whom appellant's brother had worked in Mexico. The sister-in-law testified that "Sergio" was involved in trafficking drugs and money. Based on the foregoing, a rational fact finder could have found guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

We note that appellant relies on a case from the Amarillo Court of Appeals for the proposition that an officer's testimony that a person's actions match a drug courier

6

profile is insufficient to establish a nexus between the money transported and some criminal activity beyond a reasonable doubt. *See Deschenes v. State*, 253 S.W.3d 374, 385 (Tex. App.—Amarillo 2008, pet. ref'd). However, appellant's reliance on *Deschenes* is misplaced because the evidence in the instant case includes much more that mere "speculative statements" about the source of the money possessed and transported by appellant. *See id.* at 385–86. As set forth above, appellant made incriminating statements to Trooper Coronado to the effect that she had been paid by a drug cartel to transport money from Dallas to the Laredo area and then into Mexico. Accordingly, we reject appellant's argument that the evidence is insufficient under the precedent set in *Deschenes*.

Appellant's issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of August, 2013.

7